IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS ALBERT NICHOLS, | ) |
| Petitioner, | ) |
| v. | ) NO. 3:19-cv-00336 |
| | ) JUDGE CAMPBELL |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM

Pending before the Court is Petitioner Thomas Albert Nichols' motion to vacate, set aside, or correct his sentence under 18 U.S.C. § 2255 based on newly discovered evidence. (Doc. No. 1). The United States responded to the motion, acknowledging that, under the circumstances, it would be appropriate for the Court to hold a hearing. (Doc. No. 23). The Court held a hearing on March 7, 2022, and July 8, 2022.[1] The parties filed additional briefing to address evidence presented at the hearing. (Doc. Nos. 82, 90).

For the reasons stated herein, Petitioner's motion to vacate, set aside, or correct his sentence under 18 U.S.C. § 2255 will be **DENIED**.

---

[1] The hearing transcript is filed at Doc. No. 78 (Vol. I) and Doc. No. 79 (Vol. II). Citations to the hearing transcript are as follows: "Tr. at PageID# ___."

## I. BACKGROUND

**A. Evidence Presented at Trial**[2]

In 2002, a jury found Petitioner Thomas Albert Nichols and co-defendant Carlton Smith guilty of bank extortion.[3] The Sixth Circuit summarized the factual basis of the conviction as follows:

> This case involves a home invasion and bank robbery in Clarksville, Tennessee. Carolyn Pierce is an area manager for First American Bank. On December 12, 1996. Douglas Daigle and Smith went to the Pierce household and took Mark Pierce, a seven-year old, and his grandparents, Leonard and Nancy Beaudoin, hostages. Daigle and Smith also took Don Pierce hostage when he came home from work. At approximately 7:30 p.m., Ms. Pierce called home and spoke to her son. She later arrived home and was taken hostage. During the night, Ms. Pierce and her family were threatened with harm unless she delivered money to the men holding her and her family captive. Ms. Pierce was told that a bomb would be strapped to her husband and that if she successfully delivered the money from the bank, she would be able to defuse the bomb and save her husband.
>
> The next morning, December 13, 1996, around 4:00 a.m. or 5:00 a.m., Mr. Pierce was bound and gagged and tied to his Jeep Grand Cherokee and was left outside a Waffle House on Riverside Drive in Clarksville. Ms. Pierce went to the bank and emptied out the vault in the amount of $851,000. Two bags she had filled with the money were placed in the back of Ms. Pierce's truck. Daigle told her that there would be an envelope in the glove box which contained the directions of where to park the truck. Ms. Pierce parked the truck a short distance from the bank. As she was walking back to the bank, she observed a black convertible

---

[2] The background of this case is set forth in detail in prior judicial opinions. *See United States v. Nichols*, 100 F. App'x 524 (6th Cir. 2004); *United States v. Smith*, 320 F.3d 647 (6th Cir. 2003).

[3] Nichols was convicted of extortion with use of a dangerous weapon and aiding and abetting in violation of 18 U.S.C. §§ 2113(d), and bank extortion by forced accompaniment aiding and abetting in violation of 18 U.S.C. §§ 2113(e). He was sentenced to serve 405 months in prison. *United States v. Nichols*, 3:00-cr-00095 (M.D. Tenn.), Doc. Nos. 155, 205. Citations to the trial transcript in the underlying criminal case are to "Tr. Trans., Vol. __, at PageID# __."

Mustang drive past her which eventually parked next to her pick-up truck. Ms. Pierce returned to the bank, waiting for a call which never came. At 9:30 a.m., bank security was contacted. Mr. Pierce was located, unharmed, by some private citizens, freed by officers of the Clarksville Police Department and reunited with his wife.

The widow of [Douglas] Daigle, Capri Seiber, testified at trial that Mr. Nichols was driving the Mustang. Ms. Seiber testified that she heard her husband and Smith over two-way radios talking about the money they obtained from Ms. Pierce's delivery. Ms. Seiber stated that she and [Douglas] Daigle in one car, and Smith and Nichols in a black Mustang, drove to Goodlettsville where they divided up the money in a hotel room at approximately 9:30 a.m. that morning.

*United States v. Nichols*, 100 F. Appx. at 526.

At trial, evidence against Nichols included Capri Seiber's testimony that Douglas Daigle told her Nichols would be working as the "outside man" at the Clarksville robbery. Seiber also testified that Nichols and Smith stayed at a Shoney's Inn in Goodlettsville and that Douglas Daigle was upset one of them used their real name at the hotel. (Tr. Trans., Vol. V, PageID# 616). The Government introduced a receipt showing that someone name "Terry Nichols" stayed in the hotel for two days shortly before the robbery. (Tr. Trans., Vol. VIII, PageID# 1797-98 (describing Ex. 36)). The receipt was signed "Thomas Nichols" in Nichols' distinctive signature, and listed an address similar to Nichols' address and the license plate number of a car associated with him. (*Id*. (describing Ex. 50)).

In addition, Seiber testified that Nichols and Smith left the hotel around 9:00 or 9:30 a.m. to drive the black Mustang to Smith's house, which was about 170 miles to the east. (Tr. Trans., Vol. V, PageID# 634-35, 695). Approximately three hours later, Nichols was pulled over driving a black Mustang less than 10 miles from Smith's house. (Tr. Trans., Vol. VIII,

3

PageID# 1801-04).

Evidence at trial also showed that shortly after the robbery, Nichols, who was unemployed and lived with his mother, purchased a Harley-Davidson motorcycle, and Nichols' mother had $48,000 deposited into her bank account. (*Id*. at PageID# 1804).

## B. Evidence Presented at the Hearing

Petitioner maintains that he is innocent of the crimes for which he was convicted and that, serendipitously, while incarcerated at FCI-Elkton, he encountered and befriended the person who actually drove the black Mustang during the Clarksville robbery. The person he met in prison was Gordon Daigle ("Daigle"), the son of Douglas Daigle, who was the undisputed ringleader of the Clarksville bank extortion. Petitioner presented an affidavit signed by Daigle which states that that Daigle, not Nichols, drove the black Mustang, that Nichols "did not plan, aid, or assist in the planning or execution of this robbery," and that Capri Seiber falsely testified that Nichols was involved in order to protect Daigle. (Doc. No. 1-1, ¶¶ 3-5, 12). The affidavit also states that the hotel room that appeared to have been rented by Nichols was actually rented by Douglas Daigle using a Tennessee driver's license bearing Thomas Albert Nichols' name. The affidavit stated that Douglas Daigle used the same false identification to purchase a shotgun that was used in the robbery in the name of Thomas Albert Nichols. (*Id*. ¶¶ 13-14).

At the hearing, the Court heard testimony from Thomas Albert Nichols, Gordon Daigle, Carlton Smith, and the two people who signed the affidavit as witnesses – Mark Wasco and Bryan Noel. Gordon Daigle testified that, for the most part, the statements in the affidavit were false. He testified that he did not serve as the getaway driver and had no knowledge of the

4

Case 3:19-cv-00336   Document 92   Filed 03/06/23   Page 4 of 10 PageID #: 497

robbery. He stated that he had spoken with Nichols about his father, but did not tell Nichols that he was part of the Clarksville robbery. Daigle testified that he had no part in drafting the affidavit and that he signed it because Nichols, Wasco, and Noel kept asking him to. He stated, "I remember having the paper shoved under my nose and signing it on like – I think I might have even signed it on the wall or on a window. I don't even remember." (Tr. at PageID# 196, 223).

Mark Wasco and Bryan Noel, both friends of Nichols, signed the affidavit as witnesses. (*Id*. at PageID# 254, 256). Noel, who was serving a lengthy sentence for money laundering, bankruptcy fraud, and conspiracy, testified he and Daigle drafted the affidavit together and that Nichols was not involved. (*Id*. at PageID# 291, 297-98). Noel testified that, long before Gordon Daigle arrived at FCI-Elkton, he was generally familiar with the underlying facts of the robbery and Nichols' criminal case based on his conversations with Nichols and review of Nichols' presentence report. (*Id*. at PageID# 325-26). Wasco recalled that Daigle and Nichols discussed the affidavit in advance and that Daigle, Nichols, and Noel reviewed the affidavit together. (*Id*. at PageID# 249-50). Wasco testified that Nichols tried to dissuade Daigle from signing the affidavit, but Noel did not recall any such efforts. (*Id*. at PageID# 274). For his part, Nichols claimed he had no part in drafting the affidavit and did not know anything about Daigle's role in the robbery until he was presented with the prepared affidavit. (*Id*. at PageID# 364).

The last witness was Nichols' co-defendant, Carlton Smith. Smith testified that Nichols and Douglas Daigle were involved in the crime. (*Id*. at PageID# 412-13). Smith said he did not know Gordon Daigle. (*Id*.).

## II. LEGAL STANDARD

Petitioner brings this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

A petitioner seeking to file a second or successive motion to vacate his sentence must first seek authorization from the Court of Appeals under 28 U.S.C. §§ 2255(h) and 2244(b)(3). Authorization is available only if the petitioner's application contains either "(1) newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Petitioner's burden at the authorization stage is not onerous and requires only a prima facie showing of entitlement to file a second or successive Section 2255 motion. *See* 28 U.S.C.

6

Case 3:19-cv-00336   Document 92   Filed 03/06/23   Page 6 of 10 PageID #: 499

§ 2244(b)(3)(C). The Sixth Circuit found Petitioner made the requisite prima facie showing that his petition contains newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty and authorized him to file this second or successive petition under Section 2255. *In re: Thomas Albert Nichols*, No. 18-5838 (6th Cir. April 24, 2019). Petitioner's Section 2255 claim is therefore properly before the Court.

As an initial matter, it is not clear that a free-standing claim of actual innocence – *i.e.*, a claim of actual innocence not grounded in constitutional or statutory error – is cognizable under Section 2255. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009) ("Whether [a federal constitutional right to be released upon proof of 'actual innocence'] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."). In *Herrera v. Collins*, the Supreme Court left open the possibility of federal habeas relief in a capital case where a "truly persuasive demonstration of 'actual innocence' made after trial would render the execution of defendant unconstitutional," but qualified that "the threshold showing for such an assumed right would be extraordinarily high." 506 U.S. 390, 417 (1993).

The United States takes the position that, in a non-capital case, such as this one, a freestanding claims of actual innocence is not cognizable under Section 2255. (Doc. No. 90 at 14, n.8 (citing *Harris v. Warden*, 801 F.3d 1321, 1324 n.5 (11th Cir. 2015) ("A § 2255(h)(1) showing serves only to allow courts to consider the merits of a petitioner's constitutional [and

7

statutory] claims;" it is "not an invitation to file freestanding claims of actual innocence."))). The Government argues that the Court needs to decide this issue because even if such relief were available, Petitioner does not meet the "extraordinarily high showing" to merit such relief.

The Government appears to assume that the "extraordinarily high showing" is the standard articulated in 28 U.S.C. § 2255(h)(1), under which the Defendant must "establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offense." (Doc. No. 90 at 13). By its terms however, the certification requirement of Section 2255(h)(1) is just that – a prerequisite to bringing a second or successive claim. The language of the statute does not suggest that, if certification is granted, the Court must apply this standard to the habeas claim.

Defendant cites the standard for considering a habeas claim in which a federal statute, but not the Constitution, is the basis for seeking post-conviction relief. (*See* Doc. No. 82 at 5 (citing *United States v. Brown*, 62 F.3d 1418 (Table), No. 94–5917, 1995 WL 465802, (6th Cir. 1995) (citing *Reed v. Farley*, 512 U.S. 339, 353-54 (1994)))). In *Reed*, in the context of discussing habeas petitions where statutory violations are at issue, the Supreme Court explained that the "established rule" with respect to habeas claims based on nonconstitutional claims is that such claims "can be raised only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" 512 U.S. at 354 (citing *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976)).

Under the circumstances of this case, it is unnecessary to decide whether Petitioner may pursue a freestanding claim of actual innocence, and, if so, what the precise legal standard is

for evaluating such a claim. If such a claim may proceed, it undoubtedly faces a high bar for relief. *See Herrera*, 506 U.S. at 417 (finding that the threshold showing for a freestanding actual innocence claim "would necessarily be extraordinarily high"). Petitioner's claim fails under both the miscarriage of justice standard advanced by Petitioner and the clear and convincing standard asserted by the United States.

## III. ANALYSIS

In reviewing Petitioner's claim of actual innocence based on new evidence, the Court must consider the "evidence as a whole." *See e.g.*, *House v. Bell*, 547 U.S. 518, 538, 39 (2006). The Court will state at the outset that none of the witnesses were particularly credible. Not only do all of the witnesses have significant criminal history bearing on their credibility, but their stories about the course of events leading to the execution of the affidavit are inconsistent. Even if the witnesses were entirely credible and their testimony consistent so that the Court could find that Daigle helped draft the affidavit and voluntarily signed it (which was not established), given that Daigle now denies any part in the affidavit and any role in the Clarksville robbery, it is difficult to fathom how a reasonable jury would find that the repudiated affidavit establishes Nichols' innocence.

Moreover, if Daigle had testified consistent with the affidavit, which he did not, such testimony would not negate other evidence adduced at trial, such as Nichols' traffic violation while driving a car matching the description of the car used in the robbery at a time and location fitting the timeline of the robbery; his signature on the hotel receipt; the purchase of a Harley Davidson motorcycle; and the deposit of a large sum into his mother's bank account shortly

9

after the robbery. And the assertion that Capri Seiber lied about Nichols' involvement in the robbery to protect Daigle would merely be one consideration for the jury to weigh in considering the credibility of Seiber's testimony; it does not unequivocally establish that she was lying. Finally, the Court considers that Carlton Smith affirmed Nichols' role in the robbery and said Daigle was not involved.

## IV. CONCLUSION

In light of the foregoing, the Court finds that Petitioner has not satisfied the high evidentiary burden to warrant the exceptional relief of vacating his 20-year-old conviction and holding a new trial. Accordingly, Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 will be **DENIED**, and this action **DISMISSED**.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE